IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARION GARRETT,[1] | § | |
| | § | No. 6, 2019 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File Nos. 17K-10-8TK & 17-10-9TK |
| DIVISION OF FAMILY | § | |
| SERVICES, | § | Petition Nos. 17-33033 & 17-33052 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: April 22, 2019
Decided: June 17, 2019

Before **STRINE**, Chief Justice; **SEITZ** and **TRAYNOR**, Justices.

## <u>ORDER</u>

Upon consideration of the appellant's brief filed under Supreme Court Rule 26.1, her attorney's motion to withdraw, the response of the Division of Family Services ("DFS"), and the response of the attorney *ad litem*, it appears to the Court that:

(1) The respondent below-appellant, Marion Garrett ("the Mother"), filed an appeal from the Family Court's decision, dated December 5, 2018, terminating

---

[1] The Court previously assigned pseudonyms to the appellants under Supreme Court Rule 7(d).

her parental rights to her two daughters ("Children").[2]  On appeal, the Mother's counsel ("Counsel") has filed an opening brief and motion to withdraw under Supreme Court Rule 26.1.  Counsel represents that she has made a conscientious review of the record and the law and found no meritorious argument in support of the appeal.  The Mother has submitted points for the Court's consideration.  In response to Counsel's submission, DFS and the Children's attorney *ad litem*, have moved to affirm the Family Court's termination of the Mother's parental rights.

(2)  The older daughter was born in 2011 and the younger daughter was born in 2013.  On August 30, 2016, DFS was awarded temporary custody of the Children by emergency *ex parte* order.  DFS alleged that the family had been involved with DFS for several months, the family had been residing at a hotel since mid-July, the Mother was unemployed and lacked funds to pay for a place to stay, and there were no other family members or friends who could take care of the Children.

(3)  At the preliminary protective hearing on September 7, 2016, the Family Court appointed counsel to represent the Mother.  The Mother stipulated to the Children's dependency or neglect based on her homelessness and continued mental health issues.  She also waived protective and adjudicatory hearings and requested a

---

[2] The Family Court also terminated the parental rights of the Children's fathers, who are not parties to this appeal.  We only recite the facts in the record as they relate to the Mother's appeal.

reunification case plan. The Family Court found that the Children continued to be dependent or neglected and that the Children continued to be in, or there was substantial imminent risk of, actual physical, mental or emotional danger. The Family Court also found that DFS had exercised due diligence to identify and notify all grandparents and adult relatives of the Children.

(4) On October 6, 2016, the Family Court held a dispositional hearing. The Children were in a different foster care home after the initial foster care parent expressed concern with the older child's behavioral issues. The Mother's case plan included a mental health evaluation and compliance with any mental health treatment recommendations, working with a parent aide, finding and maintaining housing, and obtaining employment. DFS had communicated with the maternal grandmother (who had the Mother's two older children) about the Children, but she was unable to care for them. The Family Court found that Children continued to be dependent, it was in their best interests to remain in DFS custody, and DFS was making reasonable efforts toward reunification.

(5) On January 3, 2017, the Family Court held a review hearing. The Mother's progress on her case plan included working with a parent interventionist, finding possible employment, and moving in with the family of her girlfriend. The older child had alleged that the husband of the girlfriend's mother had abused her,

3

but he was not living in the home. The older child attended trauma-focused therapy every other week.

(6) On April 5, 2017, the Family Court held another review hearing. The Family Court found that the Mother had been doing well on her case plan at the last review hearing, but had since missed several visits with the Children because she felt overwhelmed. Based on the Mother's mental health evaluation, it was recommended that she engage in psychotherapy to address her experience as a victim of domestic violence and to develop coping mechanisms. The older child was moved to a different foster home after behaving in a dangerous and aggressive manner toward the younger child. The older child continued to see a therapist.

(7) On July 11, 2017, the Family Court held another review hearing. The Mother was attending visits with the Children more regularly since the last hearing. She had a therapist for her mental health issues, but was seeing him inconsistently. The Mother was no longer living with her girlfriend and was not employed. The older child had extreme temper tantrums and continued to see a therapist.

(8) On August 30, 2017, the Family Court held a permanency review hearing. The Family Court found the Mother's progress on her case plan was inconsistent. She had missed four out of eight visits with the Children, failed to address her past issues with domestic violence, and needed to reengage with the parent interventionist. She had obtained employment and was seeing her therapist

4

consistently. She was also pregnant and living again with her girlfriend. The older child's behavior was improving. The Family Court authorized DFS to add termination of parental rights/adoption as a concurrent goal to the permanency plan and warned the Mother that time was running out on her time to complete the case plan. DFS filed petitions for termination of parental rights on October 27, 2017.

(9) On November 27, 2017, the Family Court held a review hearing. The older child continued to see a therapist and the younger child had started therapy due to some behavioral issues the foster mother had noticed. The Mother had stable housing and made significant progress in her therapy, which also addressed the domestic violence she had survived. DFS wanted to see how the Mother coped with the new baby before attempting trial reunification with the Children. Based on the Mother's significant progress on her case plan in the preceding three months, the Family Court found that reunification should continue to be a permanency goal even though the Children had been in foster care for almost fifteen months.

(10) On March 7, 2018, the Family Court held a review hearing. The Children continued to participate in individual therapy and started joint sessions in order to address the concerns about how the older child treated the younger child. The Mother's therapy had been interrupted by the birth of her new child, but she was in contact with her therapist. The Mother had stable housing and was going to return to work, but her relationship with her girlfriend was unstable. The Mother's

5

visitation remained supervised. The Family Court found that reunification should continue to be a permanency goal even though the Children had been in foster care for almost nineteen months.

(11) On October 24, 2018, the Family Court held a termination of parental rights hearing. The Family Court heard testimony from the Mother's therapist, the Children's therapists, the psychologist who initially evaluated the Mother, a friend of the Mother, a parent interventionist, two DFS employees, the younger child's foster mother, an employee of foster care agency responsible for the older child, and the Mother. The testimony reflected that the Mother had been less engaged in her therapy and was discharged after missing multiple sessions.

(12) The testimony also reflected that the Mother's friend was often caring for the new baby because the baby got on the girlfriend's nerves, the friend continued to care for the baby after the Mother and her girlfriend broke up, and the friend was going to seek guardianship of the baby. The Mother had unsupervised and then supervised visits with the Children due to concerns about her mental health. The Mother had missed multiple sessions with the parent interventionist. The parties submitted written closings in November.

(13) On December 5, 2018, the Family Court issued a decision terminating the parental rights of the Mother. The Family Court found by clear and convincing evidence that the Mother had failed to plan adequately for the Children's needs under

6

13 *Del. C.* § 1103(a)(5). The Family Court found that the Children had been in DFS care for more than two years, the Mother had failed to demonstrate that she could assume legal and physical custody of the Children, and the Children needed stability and could not continue to wait for the Mother to complete her case plan. The Family Court next considered the best interest factors under 13 *Del. C.* § 722 and found, by clear and convincing evidence, that termination of parental rights was in the best interests of the Children.[3]

(14) On appeal, the Mother argues that she should have been given more time to prove that she can parent the Children. She states that she has stable housing, is employed and going to school, and often cares for her youngest son who is in the guardianship of her friend. DFS and the Children's attorney *ad litem* argue that the Family Court did not err in terminating the Mother's parental rights.

(15) This Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[4] We will not disturb the Family Court's

---

[3] The best interest factors include: (i) the wishes of the parents regarding the child's custody and residential arrangements; (ii) the wishes of the child regarding her custodians and residential arrangements; (iii) the interaction and interrelationship of the child with her parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, and any other residents of the household or persons who may significantly affect the child's best interests; (iv) the child's adjustment to her home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance by both parents with their rights and responsibilities to the child under 13 *Del. C.* § 701; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any resident of the household. 13 *Del. C.* § 722.

[4] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).

rulings on appeal if the court's findings of fact are supported by the record and its explanations, deductions, and inferences are the product of an orderly and logical reasoning process.[5] We review legal rulings *de novo*.[6] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[7]

(16) The statutory procedure for terminating parental rights requires two separate inquiries.[8] First, the Family Court must determine whether the evidence presented meets one of the statutory grounds for termination.[9] Second, the Family Court must determine whether termination of parental rights is in the best interest of the child.[10] The standard of proof for both of these requirements is clear and convincing evidence.[11]

(17) After careful consideration of the parties' positions and the record on appeal, we find no error in the Family Court's application of the law to the facts and conclude that the Family Court's factual findings are well-supported by the record. It is laudable that the Mother is working to improve herself. But the Children were in DFS custody for more than two years by the time of the termination of parental rights hearing. Even after the Family Court gave the Mother more time to work

---

[5] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).
[6] *Id.*
[7] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).
[8] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[9] 13 *Del. C.* § 1103(a) (listing the grounds for termination of parental rights).
[10] 13 *Del. C.* § 722(a).
[11] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

toward reunification after the permanency hearing, she was unable to address her mental health issues consistently and to assume legal and physical custody of the Children. There was no error or abuse of discretion by the Family Court in terminating the Mother's parental rights.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice